All rise, please. The Honorable United States Court of Appeals for the First Circuit is now in session. All persons have the opportunity to speak before this audience. Please keep their attendance and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. There is a change in today's case list as previously discussed. The first case this morning will be 25-1157, the United States v. Roache. Counsel for the appellant, please. Good morning, and may it please the Court. I'm Chrissy DeMasso. I represent Isaiah Roache. I'd like to reserve two minutes for rebuttal. You may. Thank you. The district court increased Mr. Roache's total offense level by six instead of by two based on the unrecorded, unsworn, uncorroborated, and unreliable statements of his co-defendant. Regardless of whether the standard of review is de novo, abuse of discretion, or a clear error, Mr. Roache has shown that Mr. Brunson's statements were unreliable and that the government did not bear its burden of proving to a preponderance that the enhancement applied. I am curious about the standard. What is your argument on why de novo review should apply here?  I mean, this Court has repeatedly stated that de novo review applies to the application of guidelines to the facts. There's, you know, there's Dixon, there's Donovan. There are cases that say it. There are plenty on the other side, though, right? But even still, whether to believe the guy is clear error, right? I mean, that's just a fact. Like, do you believe him or do you not believe him is clear error. So the general reliability determination, and I believe the government agrees with this, is abuse of discretion. Okay. So there's a deferential standard whether to believe the guy. Yes. Once you believe the guy, then how can it not be that there's sufficient evidence under any standard? Because the do we believe the guy seems kind of like a binary situation. Now we believe him. So how can it not be then that once you're over that, that it's not sufficient evidence to apply the enhancement? So I do think that how you frame the questions here matters. And it's hard to see how it matters in this case because there is just one statement and one person. So I think about it in sort of terms of is it reliable enough to come in at all, right? Like the first objection is like this should not even be in the PSR. And then the second piece of the objection is, okay, we're taking it. It's sufficiently reliable to consider. But even given sort of all of its flaws, does it meet a preponderance? But that sort of creates that there's a gradation that we're applying to, well, it was okay for him to think the guy was telling the truth, but we should discount it because you've made some good arguments that he rejected. That seems like a weird thing for us to do. I mean, I do think that, you know, we prevail under any standard of review. I do think that clear error is wrong and that sort of something in the middle, if we're calling that abusive discretion, is more the correct standard. I, you know, obviously de novo is my top argument, but I think that if we're not doing de novo, I think abusive discretion makes a lot of sense. I think we also have an interesting case here where we have a hybrid sort of the district court did actually specifically find Brunson unreliable in some ways. So to sort of pivot to a little bit of a different piece of the case. Unreliable, you mean specifically not credible? Yes. Which jurors do all the time, right? If they think somebody is lying about something, that doesn't mean they have to find that they're lying about something else. So there's this a case out of this court called Forbes where the court talked about kind of what this court talked about, what happens when a district court finds someone credible in certain ways and incredible in other ways. And in Forbes, this court found that the district court failed to sort of explain why. OK, if we're believing him on large, important chunks of this case, but we're not believing him on others. How do we square that? How do we say that this really important witness, this really important figure, we're finding him not credible on big pieces, but we're also finding credible on others. How is that squared? And here. Does Forbes require the fact finder or the district court to have explained the difference or can it be gleaned from the record in appropriate cases? And Forbes doesn't sort of specify that. But I think here where you do have the district court saying specifically, you know, I find his statement about not getting paid to be incredible, to be not credible. And where that is sort of going to this concept that Brunson is. You know, trying to make himself look good, he's trying to reduce his own culpability, which then raises real questions about sort of his overall statement and his overall reliability. But that's just one of the reasons that I think here under any standard of review. But, you know, abuse of discretion, even clear error. There are real reasons that this was not reliable and did not meet the preponderance standard. I'd like to focus on a couple of them. One is I do think that the court should have made a negative inference based on the lack of records. The government on appeal says that the lack of records is what they say is germane, but not dispositive. The government also agrees that Mr. Roach raised this issue below. So, you know, if you look at the 2023 allegations, the government has, you know, and they describe it in their brief that they have myriad sources, that they have ATF forms, text messages, cash out transfers, bank records. So even if Mr. Roach had a new phone in 2023, there's the record indicates that he had the same phone number since 2020. They had phone records for both individuals. They had bank records. They had cash app records, all sorts of Snapchat, like every possible thing. And there is no record corroboration for the 2021 statements whatsoever. I think that a negative inference was appropriate there. And, you know, the district court also talks about this being a really close case. The district court itself thought it was close. So if you sort of move on any of... Because there's things on both sides. I follow that your arguments are definitely worthy of being made. But ultimately, it seems like Mr. Lockhart, I know, is going to stand up here and say the other things. And that's where it feels like the standard of review does a lot of work in this case. I think what the close case piece here does, though, is if you kind of, if any part of the district court's analysis falls or is problematic, I think we really have to question what the district court itself would have done in that circumstance. Like, for example, you know, there's this piece where the government implies that the eight not implies, but the government represents that the agents in 2021 suspect Mr. Roach, that agents in Boston find guns and suspect Mr. Roach and they go to South Carolina to interview Mr. Brunson. That's not what happened. Right. They find guns in Boston. They find out that Mr. Brunson purchased them. And so their next step is simply to go talk to Mr. Brunson in South Carolina. He mentions Roach, but he offers up Roach, though. I mean, right. He does. But the piece here is that there's no corroboration. The way the government is sort of describing the investigation is to suggest that agents in Boston, independent of Mr. Brunson, already suspect Mr. Roach, such that Mr. Brunson's statements then corroborate this preexisting suspicion. And you see the district court really relying on that piece that there's some. I mean, they go down or this the South Carolina agents with nothing go over, talk to this guy. This guy says it's Roach. And meanwhile, wow, it is Roach. And there are a lot of guns coming to Boston to this guy, Roach. And so I guess I didn't follow exactly why that made Brunson unreliable, that the Boston agents weren't the ones who went there. So it's not it's not that it makes Mr. Brunson unreliable. It's that the government was trying to bolster Mr. Brunson's credibility with something that that didn't happen. So if you sort of do an imaginary investigation where there's guns in Boston and the cops think we think this is Mr. Roach, they have other reasons that just exist independent of this case. And so they find out that Mr. Brunson was the one who purchased them. And they because they have this ongoing investigation into Mr. Roach, travel down to South Carolina. And Mr. Brunson is then corroborating something they already thought. That's not what happened here. That's what the government suggests happened here. And the district court really sees that as corroborative of Mr. Brunson statements. So if I it's not so much about it makes Mr. Brunson unreliable. It's that it removes this corroboration that the district court really did rely on. If there's no further questions. Good morning. Donald Lockhart for the government. May it please the court. Unless the panel is a different preference. I'll start with the Forbes point. And our response to that is that Judge Sorokin explained in some detail why he found Brunson reliable. Notwithstanding the fact that he had reservations concerning whether Brunson was truthful about saying that he wasn't profiting from these gun deals. He relied on principally three things. Number one, the detailed nature of Brunson's statements to the agents. And number two, the fact that the 24 earlier deals that Brunson was talking about during that interview, more or less corresponded to the way things happened in the six charge transactions. And then number three, and most importantly, a point that the defense reply brief doesn't touch, is that guns from his purchases in South Carolina were starting to show up in Boston. They were being recovered from crime scenes in Boston. I'd like to drill down on that third point for just a bit. In the district court, we told Judge Sorokin that there were 11 such guns recovered between October of 2020 and January of 2024. And we attached to our sentencing memo records of those recoveries. If you look at pages 135 through 150 of the joint appendix, you'll see that actually those records extend through January of 2025, one year later. And if you look at those pages, you'll see 15 guns purchased by Brunson on particular dates in South Carolina were recovered on particular dates in Boston, primarily. One case in Taunton, one in Stoughton, and one in Brockton. But otherwise, these are all Boston gun recoveries from a guy whose alias is Boston, curiously. And you'll note that two of these gun recoveries, of the 15 that I just mentioned, are before the August 5, 2021 interview in South Carolina. So the agents are based in South Carolina, but the record makes clear that this is a Boston-based ATF investigation, which concerns the fact that guns purchased by Brunson are starting to show up in Boston. What is happening here? They're showing up at crime scenes. So the South Carolina agents are not starting from nothing. They actually have that connection we know from the cold record. What if they were? Why would that matter? It wouldn't matter because right in the interview, Brunson says, the guy I'm dealing with is Boston. They show him a photo of our defendant, Roach, and he says, yes, that's Boston. That's the guy I've been dealing with. So I think it's a tempest in a teapot. I don't see how it affects anything. But I would note that this claim that we basically misled Judge Sorokin is being made for the first time on appeal. It was not made in the district court. And so all I can work from is the cold record to respond to that, and I'm hampered by the cold record. But what I can tell you is there are data points that you can line up, which tell you that the agents certainly knew about the connection of Boston to Brunson. Was it a lead from Boston to South Carolina? Yes, and we know that also from the fact that the record reflects that on August 26, a few weeks after the in-person interview of Brunson in South Carolina, a Boston-based ATF agent is doing a telephonic interview with Brunson to clarify some of the details. So that, coupled with the information that you can look at yourselves at pages 135 through 150 of the joint appendix, tell you that this is a Boston-based ATF investigation into the fact that Brunson's guns are showing up, starting to show up on the streets of this area. And does the cold record reflect precisely everything the ATF or law enforcement knew about Roach prior to the August 5, 2021 interview in South Carolina? No, it does not. But this new claim being made for the first time on appeal is in some sense unfair because we can't now just go beyond the record to address it. Having spoken a little bit about the credibility finding that Judge Sorokin would make, I'd just like to sort of pivot a little bit to the standard of review. Can you just respond to Mr. Maslow's point that the government really could have done, if it wanted to, a lot more to corroborate Mr. Brunson with records of various kinds that might have shown that these transactions really did happen and they didn't. So what do we make of that? I don't think you really make anything of it at all. We could have done that. The standard is preponderance. If you look at all the factors that Judge Sorokin considered, it clearly supports… I mean, his second point is pretty, frankly, kind of weak. These deals were the same. First of all, they weren't exactly the same, and I didn't find any markers on those deals that were suggestive of something unusual that said, oh, clearly this would be the way these two interacted. I mean, tell me the gun, give me the money is not really much of anything. Well, I guess I disagree. I would admit that there's not a sort of signature, sort of DNA-style quality to what happened in the earlier deals versus… Even if I said make up a hypothetical about how we might do this thing, that's like how they did it. I mean, it just doesn't… Well, as we point out in the brief, the key differences between how these deals unfolded in the earlier phase versus the later phase really comes down to the fact that when Boston had originally been based in South Carolina, he moved up to Boston. So they're not doing cash transactions anymore. They're using Cash App, and in one case, Roach gives him, I guess, his ATM and a PIN number, and so he gets paid that way. Fundamentally, the deals take place the same way in the sense that Roach tells him the kind of guns he wants. He goes to the South Carolina gun shops. He gets them, and he gets paid for them, and he lies on ATF forms as part of it. So, I mean, we can quibble on the margins about whether that's a sort of a signature quality, but certainly they happen more or less the same way, and so we don't agree that it's a weak factor. We think it's actually an important thing. The third factor, we think, is just powerful corroborating information. The fact that 15, 15 of this man's South Carolina-purchased guns have shown up in Boston. I mean, think about it. This is not just the census of the Brunson guns that are in circulation in Boston. This is the ones that we actually grabbed off of people on the street, from which you can infer that this is the tip of the pyramid. If we get one gun, presumably there's another one we weren't able to get. The total here adds up to 30, right? He purchased 46 in total. We know that. That's another data point. South Carolina gun shop records, the evidence shows, show a total of 46 purchases. If you take the 15 that we pulled off the street, you posit that, well, we might have gotten half. You get your 30 right there. That is powerful, powerful corroborating information. I'm interested in turning you toward the standard of review and what you think we ought to do with that. Right. Okay. So to start with the standard of review, the parties agree that credibility assessments, like the one of Brunson, are reviewed for abuse of discretion. And as Judge Aframe pointed out, once you posit that there was no abuse of discretion in Judge Sorokin's credibility, finding here, the rest of the analysis kind of falls into place. You know, I appreciate the theoretical point that there's still sort of an overarching gun quantity determination that has to be made. But to the extent that that largely turns on Brunson's credibility when he says there were 24 additional gun deals, it doesn't seem like the standard of review matters much after that point for this case. But I want to speak more broadly to the standard of review because you may be thinking beyond this case. And so what our position is here is that fact-bound applications of the sentencing guidelines are reviewed for clear error. We know that from the early decisions of this court which say so and which are binding precedent. We know that from the statute. It's just mixed questions of fact and law, right? I mean, we're applying some facts to a guideline standard. Isn't it the usual sort of sliding scale of mixed questions? Some get more deferential reviews. Some get less. So I think here's the key. And if you'll let me write the opinion, here's how it would go. You would say here's bedrock. We know from Congress that due deference applies to applications of guidelines to the facts. The question then arises what level, may I continue, what level of deference is due in a particular case? And our position is that the level of deference that's due in a fact-bound, fact-intense application of the guidelines is clear error. We know that from the early First Circuit cases. To your point, there may be applications that call for some measure of legal analysis, and that could change matters. But the idea that de novo review applies to a gun quantity determination, that's just untenable. As you say, thinking about all the other cases, your point is it's not always de novo. Obviously, it's not that. It's not always clear error. It's depending on the precise kind of analysis you're doing in that situation. And this one, you say, is much more factual than legal.  Now, if you want to hedge bets, you can do what you did in Carvajal in 2023 and just say it's due deference. That's a little frustrating, I think, to the parties to leave it just that way. I think due deference means clear error in the case of fact-bound applications, and that you should be willing to say that rather than leave the parties in suspense over what due deference actually means, because it doesn't mean a lot. But I would note that in Buford, the First Circuit upheld a Seventh Circuit decision that applied the clear error standard. And the question before the Supreme Court was, is it de novo or due deference to that application? The Supreme Court said it's due deference, not de novo. And in the course of saying that, it upheld the Seventh Circuit and the other circuits that had said it's clear error for that application. And if you look at the application in Buford, you'll see it actually has a legal sort of cast to it in the sense that the application concerned a career offender provision, which was whether prior convictions are related or consolidated for sentencing. It sounds kind of legalish, but the Supreme Court said, no, no, no, no. This is a due deference situation, and it upheld the Seventh Circuit. Thank you, Mr. Lockhart. Thank you. Ms. Tomaso, you have two minutes. Thank you. I just want to start briefly with the facts and try to move to the standard of review. Boston is a large, major city. The government had to prove that in this case, these guns were tied to Mr. Roach by a preponderance of the evidence. When the government's talking about sort of unfairness about, you know, for the first time, something it represented in sentencing, well, that was the first time it represented that was at sentencing. So to ask the defense to sort of be ready to know what the government's own investigation had showed or did is similarly unfair. There are guns in Boston. He's not given a name. There's no suggestion he is sort of prompted to give Roach, right? Nope. But, again, there's a difference between there are guns in Boston, they don't know who, and they go down. And what the government said happened here, which is they go down to investigate Roach. And so Brunson is corroborating not just that there's guns in Boston, but that they have independent suspicion of Roach. Of all the people in the world, like there are guns in Boston. Mr. Brunson, you've made a lot of gun purchases. We have found guns ending up in Boston. Who are you selling them to? He says Roach. And from their perspective, that's correct, right? No, at that time, I think they don't know, right? They don't. That is news to them. That's new information. And then even if that's so, they investigate Roach. Then in 2023, we have this case. That's sort of all we know that happened. And lo and behold, he is a guy with a lot of guns connected to South Carolina. And now it seems to me quite plausible that now this cold identification of Roach, in retrospect, looks to be pretty accurate. I just think there's a difference between, I want to point out two things, which is that Mr. Roach and Mr. Brunson had known each other for like 10 years. So it's not a, yes, he comes up with the name, but it's not like they have a picture and they show him. What I think is important here is that what the district court thought was corroborated is very different from what was like, yes, there are guns in Boston. Mr. Roach pleads to this case. Absolutely, that exists. That's very different than what the district court was actually relying on. And if I could just make one point about the standard of review, I do want to say that two pieces, which is first that I do not think that clear error review for application of facts to guidelines is law of the circuit. I think that is not correct. And I also think that 3742E and sort of Buford and that whole line of cases, you know, they talk about clear error for factual questions. And then they have this due deference for other questions. I think that split shows that clear error does not apply to these application questions. That the difference in language between clear error and due deference matters and shows that wherever we are, if it's a sliding scale, if it's de novo, we're not all the way at clear error. Due deference captures this idea that it's application to application specific. That would be the do part, right? It's depending on how much based on what we're specifically doing. Yes, I think due deference could capture that, but it's still not, you know, they say clear error for facts and they don't say clear error for application. Thank you. Thank you.